NEW-YORK, June, 1823.

The People vs. L. Lagrille.

the prosecutor the name of the person so called, alleging that it gave the prosecutor an opportunity to know before the question was put to him. They suggested that the legal method was, for the prosecutor to select them out of the people attending the Court, and not have them called and be thus designated by the crier.

The People *vs.* Louis Lagrille. *Forgery and uttering.*

Louis Lagrille was arraigned on an indictment, charging him with forging and uttering three ten dollar notes of the Union Bank, in the City of New-York, on the 10th day of April, 1823. The notes were altered from one dollar notes to 10 dollars.

The facts of the case appeared to be as follows : the prisoner formerly lived in Westchester, but at the time of trial, and some time before, resided in New York. He was acquainted with a Mr. Isaac Smith, a young man who had formerly lived in Westchester, and renewed his acquaintance in New-York, last winter. He was in com-

pany with him about the first of April last, and invited him to call at his house ; and hinted to him that he could put him in a profitable way of business, in a business wherein he might make one thousand dollars a year ; which was understood by Smith, he having before heard the prisoner was practiced in the art of making and vending counterfeit notes.

NEW-YORK, June, 1823.

The People
*vs.*
L. Lagrille.

He called upon the prisoner at his store, and there, in the presence of two or three people who were in the store, the prisoner paid him twelve dollars, in good money, and took his note for twelve dollars fifty cents. Before Smith, however, left the store, he was taken around into the stable of the prisoner, when he returned him the twelve dollars ; and the note of twelve dollars fifty cents, held by the prisoner against him, was not given up. The prisoner, at the same time, gave him three ten dollar notes of the Union Bank in the City of New York, which he said he had found, and had them altered from one dollar note to ten dollars. Smith was to pass the notes, and allow the prisoner a premium upon them.

Rules of law in addition to the admission in evidence of counterfeit notes, not laid in the indictment.

Smith proceeded to Westchester, and on the 16th of April, passed the notes, with two or three other three dollar notes of the Eagle Bank of New Haven, upon Mr. Tidd, in exchange for a horse. He returned to New York, and was soon after arrested by Mr. Hays, the police magistrate.

He confessed, in his examination, and also testified upon the trial that he had received a considerable quantity of spurious paper from the prisoner at different times, for which he was to allow him twenty-five per cent. and which he had passed off to different people.

NEW-YORK,   A number of witnesses were called, who testified that
June, 1823.  Smith was a man of bad character, and not to be believed

The People   on oath.
   vs.
L. Lagrille.
             Benjamin Williams testified that he was at Smith's
             house some years ago, when Smith was quite a lad, and
             that one evening he was engaged in running pewter dol-
             lars.

             Mr. Bussing was introduced to prove that pewter dollars
             were very prevalent in the neighborhood, and that he had
             received some of them.

             *Maxwell, District Attorney*, objected, and contended
             that such testimony could not be received. It must be
             first shown they came from Smith ; that it was apparent
             the circumstance of running pewter dollars was a mere
             matter of amusement, and not for the purpose of defraud-
             ing.

             The Court decided that the evidence of the prevalence
             in the neighborhood, and receipt by the witness, of pew-
             ter dollars) could not be received to criminate Smith.

             *Maxwell*, for the purpose of proving the scienter of the
             notes charged in the indictment, introduced witnesses to
             prove the prisoner passed other notes, at various times, to
             different people.

             *Price* objected, that no notice had been given to the
             prisoner ; that he could not be expected to come prepared
             to defend himself against them ; and if it was intended to
             have given them in evidence, notice should have been
             given to the prisoner to produce them.

             The objection produced an argument of considerable

length between *Maxwell* and *D. Graham* for the people, and *Price* for the prisoner.

The Court decided that proof of forging and uttering other forged paper of the same amount and denomination before the Court, might be given in evidence to prove the scienter of the notes laid in the indictment; but notes of a different bank or denomination, or even notes of the same bank, of a different denomination, could not be given in evidence, unless the notes were produced to the Court, or notice given to the prisoner to produce them, and he had failed to do so, after proving them in his possession.

*Maxwell* and *Graham* then offered the admission of the prisoner to sundry persons, that he had passed counterfeit notes to different people, and on being detected, had requested those persons to destroy them.

*Price* objected.

The Court decided after argument, that they could not permit other notes of a different description and denomination to go in evidence to the jury. In murder you cannot show the prisoner was guilty of the same crime at some other time, in order to prove the malice. In larceny, in order to prove the felony, you cannot show the prisoner stole the goods of some other person at a different period of time ; but are confined to the felony charged in the indictment. In forgery and uttering forged paper, you may show the prisoner passed other forged notes, not laid in the indictment, at some other time, to different persons; but they must be of the same amount, description, and denomination. It is an exception from the general rule, which extends to almost every case, and which ties the party down in his proof to the notes laid in the indictment.

NEW-YORK,
June, 1823.

The People
*vs.*
L. Lagrille.

With respect to the prisoner's admission, it did not alter the case. How does it appear to the Court the notes were forgeries—they are not before the Court?

Upon these points the Court laid down the following rules:

1st. That evidence of passing other forged bills of the same description, or showing the same in possession of the prisoner, and notice, may be given in evidence to prove the scienter, if such bills be produced in Court.

2d. That evidence to the same effect may be given by parol, if it be proved that such notes be destroyed.

3d. That the like evidence may be given by parol, if it be shown that such notes be in the prisoner's possession, giving him notice to produce such notes.

4th. That it is inadmissible to give in evidence other notes of a different denomination, unless such notes be produced to the Court.

*Note.* If such notes could be produced, the Court do not mean to say they could legally be received to prove the scienter.

*Note.* The Court also reserved the point to be discussed whether, if it could be shown that the prisoner passed other notes of a different denomination, which he afterwards admitted to be forged, and which were destroyed, proof may be given of that fact.

The case was summed up by *Price* for the defendant, and *Maxwell* for the people.

The prisoner was acquitted, on the ground that Smith, the principal witness, had been discredited.